## AMERICAN NAT. INS. CO. OF GALVESTON v. RIVAS et al. (No. 9321.)

Court of Civil Appeals of Texas. Galveston. July 5, 1929.

Kennerly, Williams, Lee, Hill & Sears, of Houston, for appellant.

William H. Scott, of Houston, for appellees.

LANE, J. Refugio Rivas, named as beneficiary in a policy of insurance issued by the American National Insurance Company of Galveston upon the life of Victoria Carrales, joined by her husband, Joe Rivas, brought this suit against the insurance company to recover upon said policy, and for attorney's fees and penalty for nonpayment of amount due on policy on demand. The policy sued upon, among other things not necessary to be here mentioned, provides as follows:

"American National Insurance Company, in consideration of the payment in advance of the premium mentioned in the schedule below on or before each Monday during the continuance of this contract, doth hereby agree, subject to the agreements and conditions below on the reverse hereof, each of which is hereby made part of this contract and contracted by the assured to be part hereof as fully as if herein recited, to pay, immediately upon receipt of due proof of the death of the insured made in the manner, to the extent and upon the blanks required herein, and upon surrender to the home office of this policy and all receipt books, the amount stipulated in said schedule: Provided, however, that no obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health."

"This policy is issued upon an application which omits the warranty usually contained in applications, and contains the entire agreement between the company and the insured and the holder and owner hereof. * * *"

The insurance company answered by general denial and by specially alleging that the policy never became effective as a contract of insurance, because the insured was not in sound health on the 21st day of March, 1927, same being the date on which the policy was issued and delivered.

A jury was chosen, impaneled, and sworn to try the case, but, after the introduction of all evidence by the respective parties, the court instructed the jury to return a verdict for the plaintiff for $510 together with a penalty in the sum of $61.20, and for the further sum of $75 attorney's fees. A verdict was returned in accordance with such instructions, and a judgment was accordingly rendered.

The insurance company has appealed, and presents as its main reason for a reversal of the judgment that the court erred in peremptorily instructing a verdict for the plaintiffs, in that there was evidence raising the issue as to whether the insured was in sound health at the time of the delivery of the policy.

We think appellant's contention should be sustained. In support of its contention that the evidence raised the issue as to whether or not the insured was of sound health at the time the policy was delivered, appellant offered in evidence a death certificate as required by rule 40a of article 4477, Complete Tex. St. 1928.

In compliance with the requirements of subdivision 14 of said rule 40a, it is substantially stated that Refugio Rivas, whose address was 201 Seventy-Seventh street, furnished the information upon which the certificate was made, and that such information was furnished to T. T. McDonald, registrar, who signed the certificate as of date February 29, 1928. In answer to this subdivision, it is stated that insured died on the 28th day of February, 1928. In complying with requirements of subdivisions 17 and 18, the certificate of Dr. I. T. Poyner, who attended insured during her last sickness, is set out and is as follows:

"I hereby certify, that I attended deceased from Feb. 27, 1928, to February 28, 1928.

"That I last saw her alive on Feb. 28, 1928, and that death occurred on the date stated above at ———— m.

"The cause of death was as follows:

"Nephritis.

"Brights Disease. Duration One Year.

"Did an operation precede death? No.

"Was there an autopsy? No.

"What test confirmed diagnosis Physical & (undecipherable)

"[Signed] I. P. Poyner, M. D.

"Address: Harrisburg Rd.

"2—28—1928."

Appellant also introduced in evidence a paper purporting to give information relative to the personal and statistical particulars inquired about in subdivisions 1 to 13, inclusive, of rule 40a, signed by Refugio Rivas. The information furnished, however, to said subdivisions 1 to 13, inclusive, has no tend-

ency to furnish information as to whether or not insured was in sound health at the time of the delivery of the policy of insurance.

In the next to the last clause of rule 40a it is provided that the medical certificate required by the article shall be made and signed by the physician last in attendance on the deceased, who shall specify the time in attendance, the time he last saw the deceased alive, and the hour of the day at which death occurred, the cause of death, so as to show the course of disease or sequence of causes resulting in the death, giving first the name of the disease and then the duration thereof.

Appellant also introduced in evidence the certificate of Dr. Poyner, required by subdivision 17 of rule 40a, in which the statement already hereinbefore attributed to him was made.

Appellee Refugio Rivas testified substantially that she lived with her mother, the insured, before her death; that during the three years next prior to taking out the policy her mother did not suffer from any disease, or ailment, and she, witness, never told any one that she did; that she knows that her mother never suffered from any disease or ailment at the time the policy was delivered to her. At this point in the testimony of the witness, appellant presented to her the following statement:

· "Houston, Texas, March 9, 1928.

"My name is Refugio Rivas, daughter of Victoria Carrales, who lived with me at the time of her death, February 28, 1928, at 201 Seventy-Seventh St.

"At the time this policy was taken out, March 21, 1927, on my mother, Victoria Carrales, she had been complaining of aches and pains around the middle of her back, and kidneys.

"I did not call any physician up to the time she took to the bed three days previous to her death. I called Dr. J. P. Poyner, giving him this information.

"Refugio Rivas.
"Witness: D. P. Johnson,
"F. J. Hoffman."

The witness admitted that she signed the paper, but said she did not know how to read English; that when she signed it Mr. Hoffman came to see her, and told her that he was from the insurance company; that the paper was not read to her; that Hoffman told her all he wanted was for her to sign the paper, so he could bring her her money; that the insurance company owed her the money and would pay her if she would sign the paper; that he showed her that he was

the agent for the company; that he told her that he was its agent; that she did not know the contents of the paper she signed, but thought it was a paper she was required to sign to get the insurance money; that she did not tell anybody that anything was wrong with her mother physically.

She testified that, on the day before the insured died, she, witness, called the doctor, who came and told witness that insured was very sick; that the doctor asked witness if insured had been sick, and she told him all she knew; that all the information the doctor got was from her, because insured was at that time unable to talk.

F. J. Hoffman, one of the witnesses to the paper signed by appellee, Refugio Rivas, and who procured such signature, testified that at the time he procured the signature to the paper he was employed by the McCane Detective Agency, and was sent out to investigate the cause of the death of the insured and all facts relative to the liability of the insurance company; that he saw Refugio Rivas on that occasion, and asked her to tell the cause of her mother's death, and to tell how long she had been sick; that appellee told him that her mother had been complaining of pains in her back and kidneys for about a year; that after getting such information he made a written statement of the facts given to him by appellee, and carried it back to appellee and read it to her, and asked her to sign it; that D. P. Johnson, one of the investigators in McCane's office, accompanied him on this last visit; that he made appellee no promise to get her to sign the paper; that he made no such statements to appellee as testified to by her.

D. P. Johnson, in his testimony with reference to the signing of the paper by appellee, supports the testimony of Hoffman. He testified that he asked appellee this specific question, "Was your mother sick at the time you took out the policy?" and that appellee said, "Yes; she had pains in the back."

It is apparent that there was a conflict in the evidence, and in the circumstances shown as a whole, relative to the state of health of the insured at the time the policy was delivered. We think, however, there was sufficient evidence to raise the issue as to whether or not insured was in sound health at such time. Under such state of facts it was the duty of the court to submit such issue to the jury, as requested by appellant.

For the reasons pointed out, the judgment is reversed, and the cause remanded.

· Reversed and remanded.